BOERSCH SHAPIRO LLP
David W. Shapiro (State Bar No. 219265)
Dshapiro@boerschshapiro.com
Martha Boersch (State Bar No. 126569)
Mboersch@boerschshapiro.com
Lara Kollios (State Bar No. 235395)
Lkollios@boerschshapiro.com
235 Montgomery Street, Suite 835
San Francisco, CA 94104
Telephone: (415) 500-6640

Attorneys for Defendant
HENRY LO

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. CR 14-00442 WHO |
| Plaintiff, | DEFENDANT HENRY LO SENTENCING MEMORANDUM |
| v. | |
| HENRY LO, | Date:  March 12, 2015 |
| Defendant. | Time:  1:30 pm |
| | Courtroom:  Hon. William H. Orrick |

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................1

SENTENCING FACTORS .......................................................................................................2

    I.      The Nature and Circumstances of the Offense ............................................2

          A.    Background ................................................................................2

          B.    The Civil Suit .........................................................................3

          C.    The Indictment .......................................................................3

    II.     The History and Characteristics of Mr. Lo ...............................................4

SENTENCING PURPOSES........................................................................................................4

SENTENCING ARGUMENT ....................................................................................................6

    I.      The Need for the Sentence to Provide Adequate Punishment, Promote Respect for the Law and Reflect the Seriousness of the Offense .........................................6

    II.     The Need for the Sentence to Afford Adequate Deterrence ........................................8

    III.    The Need for the Sentence to Protect the Public from Future Crimes of the Defendant9

    IV.   The Need for the Sentence to Provide the Defendant with Needed Correctional Treatment in the Most Efficient Manner .......................................10

OBJECTIONS TO PRESENTENCE REPORT ......................................................................11

    I.      Sophisticated Means Enhancement...........................................................12

    II.     Restitution .............................................................................12

    III.    Forfeiture..............................................................................13

CONCLUSION.........................................................................................................................15

# TABLE OF AUTHORITIES

**Cases**

*Kimbrough v. United States,*
  522 U.S. 85 (2007) ...................................................................................5

*Pepper v. United States,*
  562 U.S. 476, 131 S. Ct. 1239 (2011) ....................................................4, 5

*United States v. Adams,*
  189 Fed.Appx. 600 (9th Cir. 2006) ........................................................14

*United States v. Andrews,*
  600 F.3d 1167 (9th Cir. 2010) ................................................................12

*United States v. Booker,*
  543 U.S. 245 (2005) .................................................................................5

*United States v. Carty,*
  520 F.3d 984 (9th Cir. 2008) *(en banc)* ..................................................4

*United States v. Edwards,*
  595 F.3d 1004 (9th Cir. 2010) ..............................................................8, 9

*United States v. Harris,*
  679 F.3d 1179 (9th Cir. 2012) .................................................................5

*United States v. Menyweather,*
  447 F.3d 625 (9th Cir. 2006) ...................................................................7

*United States v. Ovid,*
  2010 W.L. 3940724 (E.D.N.Y. Oct. 1, 2010) .........................................5

*United States v. Schroeder,*
  536 F.3d 746 (7th Cir. 2008) ...................................................................7

*United States v. Smith,*
  683 F.2d 1236 (9th Cir. 1982) .................................................................9

*United States v. Whitehead,*
  532 F.3d 991 (9th Cir. 2008) ...................................................................7

**Statutes**

18 U.S.C. § 1341 .......................................................................................14

18 U.S.C. § 1343 .......................................................................................14

18 U.S.C. § 3663 .......................................................................................12

18 U.S.C. § 981 .........................................................................................14

26 U.S.C. § 6672 .........................................................................................3

28 U.S.C. 994 ..............................................................................................5

Fed. R. Crim. P. 32.2 ................................................................................14

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

U.S.S.G. § 2B1.1 ........................................................................................................12

U.S.S.G. Sentencing Table ..........................................................................................6

**Other Authority**

Allan Ellis, John R. Steer, Mark Allenbaugh, *At a "Loss" for Justice:  Federal Sentencing for Economic Offenses*, 25 Crim. Just. 34 (2011) ............................................................5

John R. Emshwiller, *White Collar Sentences Get a Fresh Look*, Wall Street Journal, June 19, 2013.....8

Katherine M. Jamieson and Timothy Flanagan, eds., *Sourcebook of Criminal Justice Statistics – 1988*, Table 6.34; Federal Bureau of Prisons, Statistics, http://www.bop.gov/about/statistics/population_statistics.jsp .........................................11

*Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, A Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate (May 2004) ...............................................................................................................10

Pew Charitable Trusts, "*Collateral Costs: Incarceration's Effect On Economic Mobility*" (2010) ......7

Pew Report (Feb. 28, 2008), *One in One Hundred:  Behind Bars in America 2008*, http://www.pewtrusts.org/en/research-and-analysis/reports/2008/02/28/one-in-100-behind-bars-in-america-2008 ..............................................................................................................11

Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, *Gender, Individuality and the Federal Sentencing Guidelines*, 8 Fed. Sent'g Rep. 148 (1995) ..................................................................10

R. Posner, *Optimal Sentence for White Collar Defendants*, University of Chicago Law School, Chicago Unbound (1980)..............................................................................................9

Report on Behalf of the American Bar Association Criminal Justice Section Task Force on The Reform of Federal Sentencing for Economic Crimes ....................................................5

Shirley R. Klein *et al.*, *Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp. Criminology 95, 99-100 (2002)..................................................................................10

Speech of Attorney General Eric Holder, American Bar Association Convention, August 12, 2013, http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html ....................................11

Valerie Wright, Ph.D., *Deterrence in Criminal Justice:  Evaluating Certainty v. Severity of Punishment, The Sentencing Project* (November 2010) ......................................................9

Wayne A. Logan,  *Informal Collateral Consequences*, 88 Washington Law Review 1103 (2013) ......9

Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime*, 8 Cardozo J. Conflict Resol. 421 (2007) ..........................................9

1   Defendant Henry Lo objects to the sentencing recommendation of the Probation Office and

2   the Government as it exceeds any sentence that is necessary to accomplish the purpose of

3   sentencing.   Mr. Lo, as a first time offender who presents no danger to the public or community,

4   and who will owe a significant amount as restitution, need not be locked up at taxpayer expense for

5   the duration recommended by the Probation Office and the Government and instead should be

6   sentenced to a term of imprisonment of 12 months and a day, ordered to pay restitution, and

7   required to perform a number of hours of community service.   This a sentence sufficient and not

8   greater than necessary, to comply with the provisions of section 3553.

9   **<u>INTRODUCTION</u>**

10   Mr. Lo is before the Court having pled guilty to two counts of wire fraud and one count of

11   mail fraud.[1]   Mr. Lo has fully accepted responsibility for this conduct, and did so even before these

12   charges were brought.   Mr. Lo recognizes that what he did was wrong and that he should suffer a

13   term of imprisonment as a consequence.   But in fashioning an appropriate sentence for Mr. Lo's

14   wrongful conduct, the Court should understand the full nature and circumstances of the offense

15   conduct.   *See* 18 U.S.C. § 3553(a)(1).   Those circumstances, we submit, do not justify the sentence

16   recommended by the Probation Office or by the government.

17   Given the nature and circumstances of the offense, as well as Mr. Lo's lack of any prior

18   criminal history, his immediate acceptance of responsibility, his need to pay restitution, and the

19   absence of any risk to the public from Mr. Lo, the sentence recommended by the Probation Office

20   and the government is much greater than necessary to reflect the seriousness of the offense; to

21   promote respect for the law; to provide just punishment for the offense; to afford adequate deterrence

22

23   [1]   After counsel for defendant prepared this Sentencing Memorandum and after the
Presentence Report had been finalized, the Government filed a Sentencing Memorandum in which it

24   makes new allegations against Mr. Lo unrelated to the offense conduct.   Those allegations are just
that – allegations that have neither been charged nor proven and indeed the defense has received no

25   discovery other than the declaration of an FBI agent filed today with the Government's Sentencing
Memorandum.   Mr. Lo objects and submits that those allegations should not be considered by the

26   Court in determining the sentence.   The Government's attempt to add to any sentence of Mr. Lo's in
this case because of new uncharged and unproven allegations made one week before sentencing

27   violates his right to Due Process, to be charged by a grand jury, and to adequate notice and discovery,
among other rights.   In addition, Mr. Lo reserves the right to respond to those allegations.

28

1

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

1  to criminal conduct; or to protect the public from further crimes of the defendant.  Instead, a sentence

2  of 12 months and a day with other conditions will accomplish all the purposes of sentencing.

3  **SENTENCING FACTORS**

4  Henry Lo was indicted on August 19, 2014, and immediately agreed to plead guilty and

5  accept responsibility for his wrongful conduct.  He entered a guilty plea on November 20, 2014 to

6  two counts of wire fraud and one count of mail fraud.  Indeed, he accepted responsibility as early as

7  July 2012.  *See* Presentence Report ("PSR") ¶ 11.

8  I.  **The Nature and Circumstances of the Offense**

9  From approximately 2008 through 2012, Mr. Lo wrongfully accessed accounts of his former

10  employer, Absolutely New, Inc. (ANI), and took money from those accounts that he used to pay his

11  own personal expenses.  *See* Plea Agreement ¶ 2.  He also wrongfully took money from an

12  individual in 2013 and used those funds to pay his personal expenses.  Those acts were wrong and

13  illegal.  However, the circumstances that drove Mr. Lo to resort to that conduct indicate that Mr. Lo

14  is not a man of an irredeemable character.  For these reasons, the Court should consider the full

15  context and circumstances in which Mr. Lo's offenses were committed when determining a

16  sentence.

17  A.  **Background**

18  Mr. Lo committed this offense because, as a result of a long and complex history of tax

19  evasion by his former employers, Mr. Lo became personally liable for the debts of his employer to

20  the IRS, EDD and the City of San Francisco.  He wrongfully and unlawfully resorted to self-help,

21  taking money from his employer because he personally would owe the taxing authorities the money

22  for his employers' debts and expected a judgment against him personally for those debts.  PSR ¶ 27.

23  His motive does not, of course, excuse his conduct, and he has therefore pled guilty and accepted

24  responsibility for his wrongful acts.  But his motive does show that he did not commit this offense

25  out of pure greed or to "fleece" a "vulnerable" company as the Probation Office suggests.

26  Mr. Lo had been employed by ANI and its predecessor company, IP&R, as Controller and

27  Chief Financial Officer ("CFO").  Shortly after Mr. Lo began working at IP&R, he learned that the

28  company had not filed tax returns or paid payroll taxes consistently since approximately 2002.  PSR

2

1   ¶ 9, 29. ANI had not paid payroll taxes for the years 2007 through 2011 (PSR ¶ 9), and IP&R had

2   not paid since 2002.  *Id.*  Ultimately IP&R owed over $3.5 million to $4 million in payroll taxes.

3   PSR ¶ 9.  Because Mr. Lo was the Controller of IP&R and later the CFO of ANI, he was potentially

4   personally liable for the company's unpaid taxes as a responsible party.  *See generally*, 26 U.S.C. §

5   6672; PSR ¶ 31.  Initially, representations were made to Lo that the company would pay its debts,

6   including its tax liabilities and debts to Lo.  PSR ¶ 33.  ANI and its controlling executives

7   (including a venture capital investor), however, ultimately refused to acknowledge its responsibility

8   for that debt, leaving Mr. Lo personally liable for the tax debts.  PSR ¶ 32.  Lo was in fact served

9   with "dunning" letters and was named in a judgment for a total of over $1.4 million.  *Id*.  During the

10  time that Lo worked for IP&R and ANI, he also advanced various costs to the companies for

11  expenses such as payroll and leases and provided collateral or personal guarantees for the

12  company's credit card accounts.  PSR ¶ 39; US-FBI000078-79; *see also* Letter of John O'Connor.

13       Lo left ANI as CFO in late 2009, shortly after ANI received funding from a bank known to

14  the investors, but he stayed on as VP of Corporate Development until September 2010.  PSR ¶ 48.

15  After Lo's employment with ANI ended, he continued as Company Secretary and continued to be

16  named on some company accounts because of the company's poor credit.  PSR ¶ 42.  He did not,

17  however, have specific express company authority to use company funds to pay his personal

18  expenses.  PSR ¶ 13.

19              **B.    The Civil Suit**

20       In October 2012, when ANI defaulted on the credit from the bank, and after Mr. Lo had left

21  ANI, the bank sued ANI and Lo personally.  Mr. Lo filed a third party complaint against ANI and

22  its investors in May 2014.  Efforts to settle the civil case by Mr. Lo and his counsel were

23  unsuccessful.  *See* Letter of John O'Connor.

24              **C.    The Indictment**

25       After the bank sued ANI, a civil lawyer (a former federal prosecutor now in private

26  practice), who was apparently representing either Square 1 Bank or ANI, sent materials to the

27  United States Attorney's Office in January 2013 in support of prosecution of Mr. Lo.  (US-

28  FBI000032).

DEFENDANT HENRY LO
                                                      SENTENCING MEMORANDUM
                                                      Case No.: CR 14-00442

The indictment was returned in this matter in August 2014.  Mr. Lo immediately informed the government that he intended to take responsibility for his wrongful actions and plead guilty.

## II.     The History and Characteristics of Mr. Lo

Mr. Lo is not an irredeemable criminal and "it was very uncharacteristic for [Mr. Lo] to act as he did."  *See* Letter from Alan Wong.  He is a committed, dedicated, and "wonderful" father and an "exceptional" community member.  *See* Letter of Ann Wachter; Letter of Jean Houston; Letter of Rev. John Anderson; Letter of Thomas Houston.  He has and continues to contribute to the community.  *See* Letter of Mabel Yee.  On pretrial release, Mr. Lo has made "very significant strides towards accepting responsibility for the choices he has made in his former business dealings and making amends to those who have been impacted by his choices" and he is not only accepting responsibility for his actions but also making a sincere effort to determine the psychological reasons for his behavior.  *See* Letter of Prabha Milstein; Letter of Ryen Skaggs.

## SENTENCING PURPOSES

The Court "shall impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes [of the] . . . need for the sentence imposed:

> (A)     to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B)     to afford adequate deterrence to criminal conduct;
>
> (C)     to protect the public from further crimes of the defendant; and
>
> (D)     to provide the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner."

18 U.S.C. § 3553(a)(2)(A)-(D).  *See also Pepper v. United States,* 562 U.S. 476, 131 S. Ct. 1239, 1242 (2011) (sentencing judge's "overarching duty under § 3553(a) is to impose a sentence sufficient, but not greater than necessary"); *United States v. Carty,* 520 F.3d 984 (9th Cir. 2008) (*en banc*) (same).  In determining the minimally sufficient sentence, courts consider these purposes, as well as "the nature and circumstances of the offense and the history and characteristics of the defendant," (§ 3553(a)(1)), "the kinds of sentences available" (§ 3553(a)(3)), "the need to avoid unwanted sentence disparities" (§ 3553(a)(6)), and "the need to provide restitution" (§ 3553(a)(7)).

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

The Supreme Court has also directed that the punishment must "fit the offender and not merely the crime." *Pepper*, 131 S.Ct. at  U.S. at 1240.  Sentencing, therefore, is "an art, not to be performed as a mechanical process but as a sensitive response to a particular person who has committed a particular crime." *United States v. Harris*, 679 F.3d 1179, 1183 (9th Cir. 2012).

The Court must also consider the guideline ranges, but those guidelines are advisory only under *United States v. Booker*, 543 U.S. 245, 756 (2005).  18 U.S.C. § 3553(a)(4).  And the sentencing guidelines are not only merely advisory, but also are to be given no more weight than any other factor under Section 3553.  *Kimbrough v. United States*, 522 U.S. 85 (2007).  Under *Booker,* the sentencing court retains significant discretion to "tailor the sentence in light of other statutory concerns as well." *Id*.  This discretion is particularly important in fraud cases, an area where the guidelines have been subject to much criticism.  *See, e.g.*, *United States v. Ovid*, 2010 W.L. 3940724, at *1 (E.D.N.Y. Oct. 1, 2010) ("the fraud guidelines, despite its excessive complexity, still does not account for many of the myriad factors that are properly considered in fashioning just sentences, and indeed no workable guideline could ever do so."); Allan Ellis, John R. Steer, Mark Allenbaugh, *At a "Loss" for Justice: Federal Sentencing for Economic Offenses*, 25 Crim. Just. 34, 37 (2011) ("While the fraud guideline focuses primarily on aggregate monetary loss and victimization, it fails to measure a host of other factors that may be important, and may be a basis for mitigating punishment in a particular case.")

In fact, the American Bar Association in November of 2014 issued a report recommending the complete overhaul of the fraud guidelines.  *See* Report on Behalf of the American Bar Association Criminal Justice Section Task Force on The Reform of Federal Sentencing for Economic Crimes.[2] That report recommends that "[i]f a defendant has zero criminal history points . . . and the offense was not 'otherwise serious' within the meaning of 28 U.S.C. § 994(j) [generally referring to violent crimes], the offense level shall be no greater than 10 and a sentence other than imprisonment is generally appropriate."  *See also* 28 U.S.C. 994(j) ("The Commission shall ensure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which

---

[2] Available at:
http://www.americanbar.org/content/dam/aba/uncategorized/criminal_justice/economic_crimes.authcheckdam.pdf).

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

the defendant is a first offender who has not been convicted of a crime of violence or an otherwise serious offense"). Under the ABA's proposed revision of the guidelines as well as Section 994(j), therefore, a sentence that does not include any term of imprisonment for Mr. Lo would be appropriate. Indeed, as the letter submitted to the Court by one of his victims indicates, Mr. Lo "does not need to be locked up." Under the ABA's proposed revisions, if any term of imprisonment is imposed, it would be within the range of 6-12 months for an individual like Mr. Lo with no criminal history points. *See* U.S.S.G. Sentencing Table (6-12 month range for offense level 10, zero criminal history points).

## SENTENCING ARGUMENT

### I.   The Need for the Sentence to Provide Adequate Punishment, Promote Respect for the Law and Reflect the Seriousness of the Offense

Mr. Lo's request for a sentence of 12 months and a day imprisonment is a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing. 18 U.S.C. § 3553(a). Given the nature and circumstances of the offense conduct, the background of the business of his former employer and the events leading to the offense, the requested sentence is sufficient to punish Mr. Lo for his conduct.

First, the circumstances that led to and surrounded Mr. Lo's commission of this offense do not warrant the sentence requested by the Probation Office or the Government. Those circumstances indicate that the offense was committed due to a unique set of circumstances and a potentially crushing financial liability that Mr. Lo assumed on behalf of his former employer and its executives by virtue of his position. Mr. Lo clearly resorted to self-help and wrongfully used the money he had taken for his own personal expenses. But the fraud did not occur independently of that situation.

Second, any term of imprisonment will necessarily have a devastating impact on Mr. Lo's wife and children, to whom he is still devoted. Of course, the government will say that Mr. Lo has no one to blame but himself for that impact, but that is a superficial view. Mr. Lo must suffer the consequences of his unlawful behavior and he recognizes that. But the issue for the court is whether the degree of punishment recommended is really necessary to punish the individual before the court. Is it really necessary to deprive Mr. Lo's children of him for the five years the government is

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

1  requesting?

2         Many courts have recognized that the collateral effects of incarceration can and should be

3  considered when imposing sentence.  *See, e.g., United States v. Whitehead*, 532 F.3d 991 (9th Cir.

4  2008) (for defendant convicted of supplying counterfeit access cards with a loss of $1 million dollars

5  and a guideline range of 41-51 months, court's sentence of probation with 1000 hours of community

6  service and restitution was not abuse of discretion where, among other factors, defendant's eight-

7  year-old daughter depended on him and he doted on her); *United States v. Schroeder*, 536 F.3d 746

8  (7th Cir. 2008) (sentence of 30 months in tax fraud case vacated in part because the district court

9  rejected defendant's argument that family circumstances justified a below guideline sentence:  "The

10  [district] court's observation that Schroeder's criminal conduct was the cause of the alleged hardship

11  to his daughter is an obvious and not dispositive one, since the culpability of a defendant who appears

12  for sentencing is a given. When a defendant presents an argument for a lower sentence based on

13  extraordinary family circumstances, the relevant inquiry is the effect of the defendant's absence on

14  his family members");  *United States v. Menyweather*, 447 F.3d 625, 634 (9th Cir. 2006) ( in

15  $500,000 embezzlement case, no abuse of discretion for district court to depart 8 levels to probation

16  in part because of unusual family circumstances where "Defendant's relationship with her daughter,

17  and the care that Defendant provides, are unusual as compared with the situation of other single

18  parents."); *see also* Pew Charitable Trusts, "*Collateral Costs: Incarceration's Effect On Economic

19  Mobility*" (2010) at 5 (children with fathers who have been incarcerated are significantly more likely

20  than other children to be expelled or suspended from school (23 percent compared with 4 percent); *id.*

21  at 18 (incarceration creates economic aftershocks for children and families, which are disrupted,

22  destabilized and deprived of a wage-earner, leading to a decline in household income as well as an

23  increased likelihood of poverty); *id.* at 21 ( "Research also indicates that children whose parents serve

24  time have more difficulty in school than those who do not weather such an experience. One study

25  found that 23 percent of children with a father who has served time in a jail or prison have been

26  / / /

27  / / /

28  / / /

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

1    expelled or suspended from school, compared with just 4 percent of children whose fathers have not

2    been incarcerated).[3]

3         Third, the length of sentence recommended by the Probation Office and the Government is

4    driven entirely by the amount of loss under the sentencing guidelines.  But, as more and more judges

5    and scholars have recognized, a sentence determined solely by the amount of loss does not "fairly

6    convey the reality of the crime or the criminal."  *See* John R. Emshwiller, *White Collar Sentences Get*

7    *a Fresh Look*, Wall Street Journal, June 19, 2013 (quoting Judge Jed Rakoff).[4]  It is the certainty of

8    punishment, and not its severity, that provides deterrence and reduces the risk of recidivism.

9         Finally, any period of incarceration, given Mr. Lo's age, will reduce the possibility that he will

10   be gainfully employed upon release and likewise his ability to pay restitution.  *See United States v.*

11   *Edwards,* 595 F.3d 1004 (9th Cir. 2010) (where defendant convicted of bankruptcy fraud and on

12   probation for prior state conviction for fraud and where guidelines range 27-33 months, sentence of

13   probation, seven months of which was to be served under house arrest, and $5,000 fine, and

14   restitution of $100,000 not abuse of discretion in part because "the district judge recognized that

15   restitution serves as a deterrent, and that [t]he term of probation imposed will enable [Edwards] to

16   continue working in order to pay the significant amount of restitution he ow[e]s.")

17        **II.**       **The Need for the Sentence to Afford Adequate Deterrence**

18         A lengthy term of imprisonment is not necessary to deter Mr. Lo from committing such an

19   offense in the future.  The offense conduct was committed in a situation that is unlikely to repeat

20   itself and Mr. Lo immediately recognized the wrongfulness of his conduct, even well before these

21   criminal charges were brought, and began making efforts to repay the individual victim of his crime

22   and to settle the civil lawsuit brought against him by ANI.  Mr. Lo has already suffered significant

23   adverse consequences as a result of the offense, including the civil suit, the dissolution of his

24   marriage, the financial impact on his children, and the future impact it will have on his earning

25   capacity and ability to engage in his profession.  *See* Letter of Jean Houston (her husband has already

---

26

27          [3]  Available at http://www.pewcenteronthestates.org/report_detail.aspx?id=60919

28          [4]  http://online.wsj.com/article/SB10001424127887323300004578555601936723828.html.

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

lost everything dear to him, even before his sentencing).  Once sentenced, Mr. Lo will be obligated to pay a significant sum as restitution, which itself may provide even more deterrence than a term of imprisonment.  *See Edwards, supra,* 595 F.3d at 1016; *see also, e.g.,* R. Posner, *Optimal Sentence for White Collar Defendants,* University of Chicago Law School, Chicago Unbound (1980) (arguing that for white collar defendants such as Mr. Lo, "a sufficiently large fine is an equally effective deterrent that is cheaper to administer and therefore socially preferable").  Furthermore, Mr. Lo will have a felony conviction for the rest of his life.  This alone is sufficient deterrence.  *See United States v. Smith,* 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."); *see also,* Wayne A. Logan,  *Informal Collateral Consequences,* 88 Washington Law Review 1103 (2013)  ("Today, convict status serves as a perpetual badge of infamy, even serving to impugn reputation beyond the grave.").

Finally, statistically, a longer jail sentence does not necessarily increase the deterrence effect, particularly in white collar cases.  Zvi D. Gabbay, *Exploring the Limits of the Restorative Justice Paradigm: Restorative Justice and White Collar Crime,* 8 Cardozo J. Conflict Resol. 421, 447-48 (2007) ("there is no decisive evidence to support the conclusion that harsh sentences actually have a general and specific deterrent effect on potential white-collar offenders").

### III.     The Need for the Sentence to Protect the Public from Future Crimes of the Defendant

For many of the reasons stated above, a lengthy prison term is not necessary to protect the public from future crimes of the defendant and the lengthier the prison term the more likely it will be that Mr. Lo will become separated from the positive influences on his behavior, such as his family and colleagues.  In fact, among low-risk offenders, such as Mr. Lo, more time in prison actually leads to increased risk of recidivism because of the loss of "pro-social contacts in the community," and the removal from "legitimate opportunities."  *See* Valerie Wright, Ph.D., *Deterrence in Criminal Justice:  Evaluating Certainty v. Severity of Punishment, The Sentencing Project,* at p. 7 (November 2010).[5]

---

[5]  http://www.sentencingproject.org/doc/deterrence%20briefing%20.pdf.

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

1    Mr. Lo is 51 years old, educated, and has maintained steady employment all of his life, even

2    after these civil and criminal proceedings were instituted against him.  He has no criminal history

3    and he has the support of his family members despite the harm he has inflicted upon them.  *See*

4    Letter of Jean Houston.  These characteristics put Mr. Lo at an extremely low risk of recidivism.  *See*

5    *Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, A

6    Component of the Fifteen Year Report on the U.S. Sentencing Commission's Legislative Mandate

7    (May 2004), (offenders over the age of 50 with criminal history Category I have a 9.5% recidivism

8    rate; offenders with criminal history of Category I with no illicit drug use have a 10.8% recidivism

9    rate); Ex. 10 (legally married offenders with a criminal history of Category I have a 9.8% recidivism

10   rate); Ex. 11 (fraud offenders with a criminal history of Category I have a 9.3% recidivism rate)); *see*

11   *also*  Shirley R. Klein *et al., Inmate Family Functioning*, 46 Int'l J. Offender Therapy & Comp.

12   Criminology 95, 99-100 (2002) ("The relationship between family ties and lower recidivism has

13   been consistent across study populations, different periods, and different methodological

14   procedures."); Phyllis J. Newton, Jill Glazer, & Kevin Blackwell, *Gender, Individuality and the*

15   *Federal Sentencing Guidelines*, 8 Fed. Sent'g Rep. 148 (1995) ("[T]he better family ties are

16   maintained[,] the lower the recidivism rate,") In short, a lengthy prison term will work against this

17   purpose of sentencing.

**IV.    The Need for the Sentence to Provide the Defendant with Needed Correctional Treatment in the Most Efficient Manner**

20   Imprisoning Mr. Lo for the length of time requested by the Probation Office and the

21   Government will provide Mr. Lo with no "correctional treatment" that bears upon his offense and

22   will only expend taxpayer resources to warehouse an individual who could otherwise use his skills

23   to pay restitution, continue to provide support for his family and contribute to the community, and

24   continue his personal efforts to understand and correct the reasons for his behavior.

25   Even the Department of Justice now recognizes that, as Attorney General Holder recently

26   stated to the American Bar Association:  "too many Americans go to too many prisons for far too

27   long, and for no truly good law enforcement reason. . . . widespread incarceration at the federal,

28   state, and local levels is both ineffective and unsustainable.  It imposes a significant economic

10                                    DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

burden – totally more than $80 billion in 2010 alone – and it comes with human and moral costs that are impossible to calculate."  Speech of Attorney General Eric Holder, American Bar Association Convention, August 12, 2013, http://www.justice.gov/iso/opa/ag/speeches/2013/ag-speech-130812.html.

Indeed, "the United States incarcerates more people than any country in the world, including the far more populous China. . . .   America is also the global leader in the rate at which it incarcerates its citizenry, outpacing nations like South Africa and Iran."  Pew Report (Feb. 28, 2008), *One in One Hundred:  Behind Bars in America 2008*, at 5.[6]  The federal prison population is currently more than four and half times what it was when the Sentencing Guidelines were enacted:  in 1986, the total federal prison population was 44,408, and today it is 216,130.  *See* Katherine M. Jamieson and Timothy Flanagan, eds., *Sourcebook of Criminal Justice Statistics – 1988*, Table 6.34; Federal Bureau of Prisons, Statistics, http://www.bop.gov/about/statistics/population_statistics.jsp.  While the cost to government has ballooned as a result, America's reliance on incarceration "for many low-risk offenders inflicts economic hardship in many, less obvious ways.  If they have a job at all, prisoners are typically unable to earn more than a very low wage, making it unlikely they will pay much, if anything, in child support, victim restitution, or taxes."  Pew Report, *supra,* at 13.

In short, there is no empirical or specific need to incarcerate Mr. Lo for the length of time recommended by the Probation Office or the Government and such a lengthy sentence will actually have negative consequences, not just for Mr. Lo, but for his family and for society as a whole.

## OBJECTIONS TO PRESENTENCE REPORT

Mr. Lo generally objects to the Probation Office's reliance upon what appears to be incendiary gossip and hearsay in making its recommendation.  Such information should not be considered by the Court in these criminal proceedings.  For instance, the Probation Office suggests that 51 months is appropriate because Mr. Lo lived in "big home" and drove "luxury automobiles" and "rented a secret luxury apartment."  First, there is nothing wrong or illegal about having assets where, as here, there is no evidence that those assets were acquired with the proceeds of the offense.

---

[6]  Available at http://www.pewtrusts.org/en/research-and-analysis/reports/2008/02/28/one-in-100-behind-bars-in-america-2008.

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

1     Second, there is no evidence that this offense was, as the Probation Office suggests, committed "all

2     so that" Mr. Lo could have a nice home or car.

3             Mr. Lo also specifically objects to the following specific portions of the Presentence Report.

4         **I.    Sophisticated Means Enhancement**

5             Mr. Lo objects to the sophisticated means enhancement.  The Probation Office recommends

6     the enhancement based upon the alleged creation "of several false documents and bookkeeping

7     entries."  PSR, Addendum to Sentencing Report, ¶ 6.  But those few acts are simply the hallmarks

8     of fraud and are present in virtually every fraud or embezzlement case.  Application of the

9     sophisticated means enhancement based on such facts would make the enhancement meaningless,

10     since it would apply in every fraud case.  Instead, the sophisticated means enhancement is

11     applicable only where there is evidence of "especially complex or especially intricate offense

12     conduct pertaining to the execution or concealment of an offense."  U.S.S.G. § 2B1.1, Application

13     Note 8(B).  While Mr. Lo's offense conduct was long in duration, and involved false statements and

14     several false documents, it was a typical embezzlement and not "especially complex" or "intricate."

15         **II.    Restitution**

16             Mr. Lo objects to an order of restitution in the amount and to the entity recommended by the

17     Probation Office.  First, Mr. Lo objects to the Sentencing Recommendation's suggestion that any

18     restitution be paid to Square 1 Bank because Square 1 Bank is not the victim of Mr. Lo's criminal

19     offenses under the applicable statutes.  The Presentence Report itself correctly notes in Paragraph

20     96 that the victim to whom restitution is owed is ANI.  The payment of any restitution to Square 1

21     Bank is legally unjustifiable, because Mr. Lo did not agree in his Plea Agreement to pay Square 1

22     Bank and the government has not proven that Square 1 Bank's losses of the money it loaned to ANI

23     was directly and proximately caused by the offenses to which Mr. Lo pled.  *See* 18 U.S.C. §

24     3663(a)(1)(A) (court may order restitution to persons other than the victim of the offense only if

25     agreed to by the parties in a plea agreement); § 3663A(a)(2) (under MVRA, restitution is payable to

26     the victim of the offense, and victim is defined as a person 'directly and proximately harmed as a

27     result of the commission of the offense for restitution may be ordered"); *United States v. Andrews,*

28     600 F.3d 1167, 1170-71 (9th Cir. 2010) (restitution order must be based on losses "directly resulting

12

from the defendant's criminal conduct" and a victim for restitution purposes is a person who has suffered a loss "caused by the specific conduct that is the basis for the offense of conviction"). Any loss to Square 1 Bank was caused by ANI's default on the line of credit that it obtained from Square 1 just days before Mr. Lo left ANI and its failure to repay those amounts in the years after Mr. Lo left the company. Therefore, any restitution should be paid to ANI and not to Square 1 Bank. If ANI owes the money to Square 1 Bank, ANI can turn the money over to Square 1 Bank and if it does not, Square 1 Bank can continue to pursue its civil remedies against ANI.

Furthermore, Mr. Lo objects to the amount of restitution because the government has not shown that the entirety of the funds claimed as losses were amounts taken by Mr. Lo without authorization or used for unauthorized purposes. In the Plea Agreement, Mr. Lo agreed to pay restitution of $1.7 million, because that amount reflects the amounts that Mr. Lo took from ANI without authorization and used for his own purposes, less the amounts of his personal funds that he advanced to ANI and was not repaid.

Finally, Mr. Lo objects to the Sentencing Recommendation that he be required to pay the restitution of monthly payments of not less than $4,000 or 10% of his income whichever is greater. The recommendation is vague – is it net or gross income and what constitutes income? – and the Probation Officer who supervises Mr. Lo should have the discretion to determine an appropriate monthly payment after Mr. Lo is released and there is sufficient information about his earning capacity and other financial obligations, including his obligation to pay the IRS for ANI's tax evasion. And since we do not know whether Mr. Lo will be employed or how he may be employed after his release, any order should require that he pay a set amount per month of a percentage of his income, whichever is *less*. If Mr. Lo makes only $3,000 per month upon his release he could not pay $4,000 a month, which the order as contemplated by the Probation Office would require.

### III.   Forfeiture

Mr. Lo objects to the recommendation at Page 5 of the Sentencing Recommendation purporting to require forfeiture of defendant's interest in $2,244,384.39. Restitution and forfeiture are not equivalent. Even if the amount were the actual loss for purposes of restitution, that amount does not reflect an amount, if any, that is legally forfeitable under the law and the indictment. An

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

1    order of forfeiture cannot be entered against a defendant unless the government meets the

2    requirements of Federal Rule of Criminal Procedure 32.2 and the forfeiture statute alleged in the

3    indictment. The government has not done so.

4        The forfeiture allegation of the indictment, which Mr. Lo has *not* admitted in his Plea

5    Agreement, lists specific property, not an amount of money equal to the Probation Officer's

6    recommendation. Under Rule 32.2, that specific property cannot be forfeited unless and until the

7    government establishes the requisite nexus between the property and the offense(s) of conviction.

8    Fed. R. Crim. P. 32.2(b)(1)(A). The government has not done so here – neither the plea agreement,

9    the indictment, nor anything in the Presentence Report establishes such a nexus. Moreover, the

10   government has not provided the defendant with the notice required. Fed. R. Crim. P. 32.2(b)(2)(B)

11   (unless impractical, property cannot be forfeited unless the court first enters a preliminary order of

12   forfeiture "sufficiently in advance of sentencing" for the parties to make modification and

13   revisions).

14       Furthermore, under 18 U.S.C. § 981(a)(1)(C), the specific provision alleged in the

15   indictment, property may be forfeitable if it constitutes or is derived from *the proceeds traceable* to

16   the specific violations of the conviction. Mr. Lo has pled guilty to Counts One, Thirteen, and

17   Twenty-Six. Plea Agreement, ¶ 1. Those counts allege violations of 18 U.S.C. §§ 1341 and 1343

18   (wire and mail fraud). The amounts alleged in those counts are far below the amount claimed to be

19   forfeitable, amounting to only $78,750. Even if those amounts were forfeitable, any additional

20   amounts are not forfeitable by virtue of the plea agreement because Mr. Lo has not and will not be

21   convicted of any additional offenses from this indictment. *See United States v. Adams,* 189

22   Fed.Appx. 600 (9th Cir. 2006) (criminal defendant may only be ordered to forfeit property

23   purchased with the proceeds of the crimes *for which he was convicted.*). Moreover, the government

24   has presented no evidence, nor does the plea agreement contain any admissions, that the specific

25   property listed in the indictment is forfeitable, much less that the sum in the Presentence Report is

26   forfeitable under Section 981(a)(1)(C). *See* Ind. ¶ 39 (alleging that the property listed is forfeitable

27   as the *proceeds* of the charged offenses); Plea Agreement, ¶ 1 (plea agreement itself contains no

28   reference to any amount as forfeitable).

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442

1  In short, there is no legal or factual basis to support an order of forfeiture in any amount,

2  much less the amount recommended by the Probation Office.

3  **<u>CONCLUSION</u>**

4  For the forgoing reasons, and based on the record herein, the defendant respectfully requests

5  that he be sentenced to a term of imprisonment of 12 months and one day, ordered to pay restitution

6  of $1.7 million, and required to serve a period of community service during the term of his

7  supervised release, as determined by the Court.

8  Dated:  March 5, 2015                    BOERSCH SHAPIRO LLP

9

10                    */s/  Martha Boersch*
                     MARTHA BOERSCH

11                    Attorney for Defendant Henry Lo

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DEFENDANT HENRY LO
SENTENCING MEMORANDUM
Case No.: CR 14-00442