MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 436-6830
    Facsimile: (415) 436-7234
    E-mail: kyle.waldinger@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR 14-0442 WHO |
| --- | --- | --- |
| Plaintiff, | ) | **UNITED STATES' SENTENCING REPLY** |
| v. | ) | |
| HENRY LO, | ) | Sentencing Date: March 12, 2015 |
| | ) | Time: 1:30 p.m. |
| Defendant. | ) | Court: Hon. William H. Orrick |

The defendant Henry Lo is to be sentenced on March 12, 2015. The parties filed their sentencing memoranda on March 5, 2015. On March 6, 2015, Lo also filed a letter from his civil attorney, with exhibits. The United States now files this reply to address issues raised in the defendant's filings.

**I.   Defendant's Arguments Regarding the Nature and Circumstances of the Offenses.**

Lo contends that he "committed this offense because, as a result of a long and complex history of tax evasion by his former employer, [he] became personally liable" for his employer's tax debts. Def. Sent. Mem., at 2:18-20; *see also id.* at 6:17-22 (arguing that offense was committed because of "potentially crushing financial liability that Mr. Lo assumed on behalf of his former employer"). As the United States pointed out in its Sentencing Memorandum, however, Lo could only be personally liable for his employer's tax liabilities if he himself knew of the corporation's failure to pay and he *willfully* chose to not correct that failure. USA Sent. Mem., at 11. Lo's contention that he was "personally

liable" for the company's tax liabilities, then, is nothing more than an admission of additional past wrongdoing. In any event, it is undisputed that Lo never paid a dime of the corporation's tax liabilities.

In addition to the red herring of Lo's tax liability, the "Background" section of his sentencing memorandum (pages 2-3) contains numerous references to paragraphs in the PSR's "acceptance of responsibility" section. However, these are *not* findings of the Probation Officer regarding the nature and circumstances of the offense; rather, they are simply unsupported contentions made by Lo. Given his past fraudulent activity, the Court should put little or no weight on his rendition of events.

The defendant also relies on a letter from his civil attorney, John O'Connor, to put facts before this Court. As set forth in Section IV, *infra*, the Court should disregard those unsworn and unsupported facts. Indeed, as explained below, at least some of them are incorrect.

## II.   Lo's Arguments Regarding his History/Characteristics and Acceptance of Responsibility.

### A.   The Defendant's History and Characteristics.

Lo claims that his "lack of any prior criminal history," "his need to pay restitution," and the "absence of any risk to the public," counsel for a sentence lower than that recommended in the PSR and by the government. Def. Sent. Mem., at 1:17-20; *see also id.* at 8:9-16 (arguing that "any period of incarceration . . . will reduce the possibility that he will be gainfully employed upon release and likewise his ability to pay restitution"). The defendant also quotes from the letter submitted to the Court by his therapist, who contends that Lo has made "very significant strides towards accepting responsibility for the choices he has made." *Id.* at 4:8-12. These facts and arguments should not sway the Court.

*First*, to say that the defendant lacks "any prior criminal history" can mean only that he has never before been ***convicted*** of a criminal offense. It would not be correct, however, to say that the man who stands before the Court committed a "one off" offense that was restricted to a specific point in time. On the contrary, by his own admissions, Lo engaged in a crime spree that dated from 2008 to mid-2013 and that involved two separate victims and utilized numerous fraudulent methods.

*Second*, while it is true that Lo will have a significant restitution obligation, that is not a fact that the Court should consider a mitigating one in determining the appropriate prison sentence. Lo has known at least since his fraud was detected in 2012 that it was likely that he would have to pay back the money that he stole from ANI. To date, he has made no efforts to do so. On the contrary, he has

continued to live the life of comfort. *See* PSR, ¶ 81 (mortgage payments of $6,600/month and private school tuition of $5,640/month). Moreover, Lo's actions suggest he is dissipating or hiding assets, or putting assets out of reach. As this Court is aware, in violation of Judge Corley's Order, Lo transferred his residence to his wife near the time of his indictment. And, without informing the Court, the government, or ANI, Lo and/or his wife recently took actions to sell that property. Earlier, after Lo's conduct was detected by ANI, he and his wife appear to have pulled $1.1 million out of the property. *See* Ex. 1. Exhibit 1 is a deed of trust filed in July 2013 showing that a mortgage lender was granted a lien on the defendant's house in the amount of $1.1 million. These funds – which are roughly half of Lo's restitution obligation to ANI – have not been accounted for.[1] At the end of the day, this defendant has gone to great pains to dissipate and transfer assets. The fact that he has done so and that the proceeds from the recent sale of his house are not sufficient to satisfy his restitution obligation should not be a reason why this Court departs or varies below the advisory Guidelines range of 51-63 months. In any event, the PSR lists one significant asset that the defendant could sell in order to come up with restitution – his business, Solid Line Products. *See* PSR, ¶ 81 (valuing business at $3,000,000).

*Finally*, Lo's contention that he presents no risk to the public is without merit in light of his recent attempts to steal money. Those actions also suggest that the only "significant stride" he has made with respect to his therapist is to mislead her regarding the sincerity of his rehabilitative efforts.

### B. The Defendant's Acceptance of Responsibility.

The defendant claims that he has "fully" accepted responsibility for his conduct, that he did so before charges were even filed, and that he "immediately agreed to plead guilty." Def. Sent. Mem., at 1:11-12, 2:4 & 4:1-2. As an initial matter, there is a colorable argument that, because of his new criminal conduct, Lo has not accepted responsibility for his crimes and, thus, is not entitled to a reduction for acceptance of responsibility. As noted in U.S.S.G. § 3E1.1, evidence that a defendant has accepted responsibility for his crimes "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." U.S.S.G. § 3E1.1 n.3; *id.* ("A defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right.").

---

[1] The mortgage was raised to $1.35 million in August 2014. *See* Ex. 2, at 1 (deed of trust).

Here, the fact that Lo appears to have engaged in fraudulent conduct vis-à-vis Maventus that is similar to the offense conduct at least suggests that he has neither recognized the wrongfulness of his actions nor fully accepted responsibility for them. *United States v. Piper*, 918 F.2d 839, 841 (9th Cir. 1990) ("evidence of continued criminal activity may be used to cast doubt on a defendant's sincere acceptance of responsibility," but noting that defendant "need not accept blame for all crimes of which he may be accused"); *accord United States v. Harris*, 38 F.3d 95, 99 (2d Cir. 1994) (both pre-plea and post-plea conduct may be considered in determining whether defendant has accepted responsibility); *United States v. McDonald*, 22 F.3d 139, 144 (7th Cir. 1994) ("It is reasonable for a district court to find that continuing criminal conduct bears on the truth of defendant's statements on the charged offense."). Although the United States is not requesting at this time that the Court deny Lo a reduction for acceptance of responsibility, the point is that this is not a case in which the evidence of the defendant's acceptance of responsibility either is abundant or justifies a below-Guidelines sentence.

The defendant also contends that he "*immediately* recognized the wrongfulness of his conduct." Def. Sent. Mem., at 8:20 (emphasis added). This is an important admission. It means that, when the defendant stole the first cashier's check in 2008, he recognized that it was wrong. Nevertheless, as the evidence shows, Lo proceeded (1) to steal at least 62 more cashier's checks totaling more than $1.3 million, *see* Pascual Supp. Decl., ¶ 12 & Ex. 1 thereto; (2) to use ANI money to pay his American Express bill to the tune of about $240,000; (3) to transfer more than $500,000 of ANI funds to his PayPal account; and (4) to use ANI's debit card to pay about $30,000 for an apartment in Mission Bay, all while cooking the books at ANI and inveigling a subordinate there to do his bidding. Then, after he was sued in relation to that conduct, the defendant hatched a new scheme to defraud his girlfriend. The government doubts that Lo "immediately recognized the wrongfulness of his actions" when he took them, but to the extent that this assertion is true, it demonstrates that he could easily differentiate right from wrong and that he made a conscious choice to do the wrong thing on numerous occasions over the course of five years. That is not a mitigating factor; it is an aggravating one.

**C.      Defendant's Recent Attempt to Steal Money.**

In its Sentencing Memorandum, the United States provided the Court with significant and credible information that the defendant had attempted to steal more than $15,000 in December 2014

from a company to which he was providing consulting services. *See* USA Sent. Mem., at 15-17. The defendant may yet respond to this evidence prior to sentencing. To date, the defendant's response has been limited to a footnote in his sentencing memorandum. *See* Def. Sent. Mem., at 1 n.1. Lo contends that the facts and materials regarding his recent criminal conduct are "just allegations." However, those allegations contain strong evidence that someone named "Henry Lo" ordered payment from Maventus's bank account to Lo's company, Solid Line Products, and that he did so without authorization.

Lo also contends that the government is trying to "add to any sentence of Mr. Lo's in this case because of new uncharged and unproven allegations." Def. Sent. Mem., at 1 n.1. On the contrary, the United States' sentencing recommendation complies with the Plea Agreement, and falls within the advisory Guidelines range. (Indeed, the government's recommendation falls 3 months below the top of the range.) The government's purpose in bringing this evidence to the Court's attention was to demonstrate (1) that Lo had not proven his burden of showing by clear and convincing evidence that he was not an economic danger to the community and (2) that he should be remanded to custody.

Lo also complains that he has received "no discovery" regarding his new criminal conduct. The United States provided Lo with discovery regarding his December 2014 conduct on March 6, 2015.

**III.   Defendant's Arguments Regarding Other Section 3553(a) Factors.**

The defendant argues that imprisonment for more than a year and a day is unwarranted for several reasons. *See* Def. Sent. Mem., at 6-11. The United States set forth a sound basis for its 60-month recommendation in its own Memorandum, and refers the Court to that argument as its main response to the defendant's § 3553(a) arguments. Several additional points are worth making, however.

The defendant claims that any term of imprisonment will have a devastating impact on his family. Def. Sent. Mem., at 6-7. A sentence of imprisonment undoubtedly will have collateral effects on Lo's family, but that does not make his case different than that of many other white collar defendants. *See* U.S.S.G. § 5H1.6 (stating that "family ties and responsibilities are not ordinarily relevant" in deciding whether to depart below a Guidelines sentence, but application notes authorize departures when defendant's sentence "will cause a substantial, direct, and specific loss of essential caretaking"). Furthermore, the fact that Lo's actions may have given his family a false sense of financial security (PSR, Sent. Rec., at 2) – which will mean that they will no longer be able to live in the manner to which

they have become accustomed – should not translate into a reduced sentence.

The defendant also claims that the sentence recommended by the Guidelines is driven "entirely" by the loss amount. Def. Sent. Mem., at 8:4. Although it is true that Lo's offense level was increased by 16 levels because he stole more than $1,000,000, his offense level was *also* enhanced because he abused a position of trust and because his conduct involved sophisticated means. Moreover, it is certainly relevant that the defendant's conduct took place over the course of five years, took numerous incarnations, and involved two victims. Contrary to Lo's assertions, then, the recommended 60-month sentence reflects the numerous factors before the Court, not simply the amount of loss.[2]

## IV. The Letter from Defendant's Civil Attorney.

On March 6, 2015, the defendant submitted a letter written by his civil attorney, John O'Connor. Doc. 34. Mr. O'Connor's letter makes numerous representations. It also attaches numerous exhibits.

The Court should disregard Mr. O'Connor's letter and the materials submitted with it. The letter is not submitted under penalty of perjury, nor has the authenticity or reliability of the information in his letter or the documents attached to it been established. There are also several additional reasons why this Court should disregard Mr. O'Connor's letter and impose the sentence requested by the government.

**Reason One** is that the government can show that at least one of Mr. O'Connor claims is incorrect. He states that "Exhibit E consists of various checks written by Mr. Lo to the company." Doc. 34-2, at p. 4 of 20. Exhibit E consists largely of checks written by Lo to ANI. As set forth in the Pascual Supplemental Declaration, at least six of those checks, totaling $290,000, were never cashed. Supp. Pascual Decl., ¶ 9. Furthermore, Lo has submitted insufficient evidence to prove that four additional checks written on an E-Trade account, totaling $210,000, were ever cashed. *Id.*, ¶¶ 10-11. To be sure, Mr. O'Connor's letter does not aver that all of the checks in Exhibit E were *cashed*, only that they were "written." Whether this phrasing was cunningly crafted, or merely poorly drafted, the takeaway for the Court should be that Mr. O'Connor's representations are merely that: representations

---

[2] In Sections I and II, *supra*, the United States has responded to the defendant's arguments about the "circumstances that led to and surrounded Mr. Lo's commission of this offense," Def. Sent. Mem., at 6:17-22, the effect that incarceration will have on his future earning ability and ability to pay restitution, *id.* at 8:9-16, the need to deter Lo, *id.* at 8-9, and the need to protect the public from his future crimes, *id.* at 9-10.

USA'S SENTENCING REPLY
CR 14-0442 WHO                                                                                    6

that are not made under penalty of perjury and that are, at least in one respect, clearly wrong.

**Reason Two** why this Court should disregard counsel's letter is that, in discussing the related civil litigation, Mr. O'Connor utterly fails to address the fact that Lo violated Judge Corley's Order in that case and by fraudulently transferring his residence to his wife. To put it bluntly, Mr. O'Connor's assertions regarding the civil litigation reflect the opinions of an advocate who is either unaware of his client's contumacious conduct, or who does not appreciate the seriousness of that conduct.

**Reason Three** is that many of the documents submitted with Mr. O'Connor's letter were attached to a Declaration filed by the defendant Lo himself in the civil case pending before Judge Corley. *See* CV 12-05595 JSC, doc. 42. It is significant that the defendant – who has already waived his privilege against self-incrimination with respect to these documents – is unwilling to refer this Court to that Declaration to support his argument. The reason is clear: at least some of the checks that the defendant has previously claimed were his advances to ANI were never actually cashed. *See* CV 12-05595 JSC, doc. 42, ¶ 38 (stating that "I made the following advances to ANI. . . ."

## V. Restitution.

The defendant objects to the restitution amount recommended by the Probation Officer. Def. Sent. Mem., at 12:16-17. He contends that "the government has not shown that the entirety of the funds claimed as losses were amounts taken by Lo without authorization or used for unauthorized purposes." *Id.* at 13:8-13. Rather, he proposes that the figure of $1.7 million "reflects the amounts that Mr. Lo took from ANI without authorization and used for his own purposes." *Id.*

The Mandatory Victim Restitution Act provides that "[a]ny dispute . . . shall be resolved by the court by the preponderance of the evidence," that "[t]he burden of demonstrating the amount of the loss sustained by a victim . . . shall be on the attorney for the Government," and that "[t]he burden of demonstrating such other matters as the court deems appropriate shall be upon the party designated by the court as justice requires." 18 U.S.C. § 3664(e). In this Circuit, courts have exercised broad discretion in applying the MVRA. *See United States v. Yeung*, 672 F.3d 594, 606 (9th Cir. 2012) ("[d]istrict courts possess a great deal of flexibility in applying the MVRA to unique factual circumstances and conducting the calculation required by § 3663A(b)(1)(B)") (citing *United States v. Gordon*, 393 F.3d 1044 (9th Cir. 2004)). Here, the defendant has admitted the following:

    (1)    he accessed ANI's Union Bank account without authorization and took $239,052.76 to pay for purchases he made with his American Express card, Plea Agrm., ¶ 2, at 3:24-28;

    (2)    he did not seek or obtain specific approval to transfer $564,310.54 of ANI funds to his PayPal account and to pay $105,000 of those funds "under the table" to two ANI employees and to transfer $370,000 of the funds to his bank account, *id.*, ¶ 2, at 4:11-19;

    (3)    he did not seek or obtain specific approval to take at least $1,356,776.72[3] in cashier's checks and use them to pay down his home equity line of credit or deposit them in his brokerage account, *id.*, ¶ 2, at 4:25-5:8; and

    (4)    he did not seek or obtain specific approval to make purchases totaling at least $30,329.50 on ANI's debit card, which purchases were used for an apartment in Mission Bay and for hotels and airfare, *id.*, ¶ 2, at 5:9-16.

These dollar amounts have all been either admitted to by the defendant or found by the Probation Officer. The United States submits that the information and materials before the Court are sufficient to show by a preponderance of the evidence that restitution should be paid to ANI (through Square 1 Bank) in the total amount of $2,198,194.85.

The defendant also objects to ANI's request that restitution owing to ANI be paid by the Clerk of the Court to Square 1 Bank. As an initial matter, this case is governed by the MVRA, which requires that restitution be paid by the defendant, irrespective of his ability to pay. It seems incongruous that such a defendant could object to the entity to whom his restitution payments will be made by the Clerk, especially when the victim has expressed its desire that payment be made in this fashion. Second, Square 1 Bank has a settlement agreement with ANI in the related civil case, which case relates to Lo's offense conduct here. *See* CV 12-05595 JSC, docs. 62-63. There is nothing in the MVRA that prohibits a victim from assigning its interest in restitution payments to a third party. All that being said, the recipient of the Clerk's restitution payments is a minor point. To the extent that the Court has concerns, it should simply order restitution be made to "AbsolutelyNew, Inc., its successors and assigns."

## VI.  Forfeiture.

Lo raises several objections to forfeiture. None of them have merit. The Indictment here contains a forfeiture allegation under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) and cites Rule 32.2, 21 U.S.C. § 853(p), and 18 U.S.C. § 982(b)(1). Forfeiture of fraud proceeds is authorized under

---

    [3]    The PSR has determined that the cashier's checks total at least $1,364,502.05.

those provisions.

And although Lo certainly has not "admitted" to the extent of forfeiture, Def. Sent. Mem., at 14:4-5, that is not required where there has been proper notice and findings. Forfeiture is an element of the sentence imposed following conviction, rather than a separate offense. *See Libretti v. United States*, 516 U.S. 29, 38-39 (1995) ("Forfeiture is an element of the sentence imposed following . . . a plea of guilty . . . . Congress plainly intended forfeiture of assets to operate as punishment for criminal conduct in violation of the federal drug and racketeering laws, not as a separate substantive offense.")

A money judgment in the amount of the proceeds of Lo's offenses is appropriate. It was not necessary to make reference to a money judgment in the Indictment, or to specify a particular dollar amount. *See* Fed. Rule of Crim. Proc. 32.2(a) ("The indictment or information need not identify the property subject to forfeiture or specify the amount of any forfeiture money judgment that the government seeks"); *United States v. Kalish*, 626 F.3d 165, 169 (2d Cir. 2010) (forfeiture notice that advised defendant he would have to forfeit amount of money equal to proceeds of offense was sufficient; indictment need not use words "money judgment"); *see also United States v. Smith*, 656 F.3d 821, 827-28 (8th Cir. 2011) (same, following *Kalish*).

Moreover, forfeiture is not limited to the amounts alleged in the counts of conviction. If a fraud case is alleged as a continuing scheme, a defendant is liable for the full amount derived from the scheme even if he is convicted of only a few substantive counts. As the Seventh Circuit noted:

> Furthermore, contrary to the defendants' claims, forfeiture is not limited solely to the amounts alleged in the count(s) of conviction. 18 U.S.C. § 981(a)(1)(C) authorizes forfeiture for '[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to' the commission of certain specified offenses, including mail fraud. 18 U.S.C. § 981(a)(2)(A) defines 'proceeds' as 'property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.' The plain language of the section 981(a)(1)(C) along with the expansive definition of 'proceeds' indicates that the statute contemplates the forfeiture of property other than the amounts alleged in the count(s) of conviction.
> We have also interpreted other statutes authorizing forfeiture to include the total amount gained by the crime or criminal scheme, even for counts on which the defendant was acquitted.

*United States v. Venturella*, 585 F.3d 1013, 1017 (7th Cir. 2009) (case citation omitted); *see also United States v. Emor*, 850 F. Supp.2d 176, 217 (D.D.C. 2012) (following *Venturella*; defendant must forfeit proceeds of entire mail or wire fraud scheme); *United States v. Hasson*, 333 F.3d 1264, 1279 (11th Cir.

Fla. 2003) ("In determining what transactions involved the proceeds of mail and wire fraud [for purposes of forfeiture], the jury was not restricted to the three substantive counts of wire fraud on which it returned a guilty verdict.  The jury was free to reconsider evidence of acquitted conduct under the preponderance standard, and to consider evidence of mail and wire frauds adduced by the government in support of the money laundering count, though not charged as separate substantive counts of mail or wire fraud.") (citation omitted); *United States v. Boesen*, 473 F. Supp.2d 932, 952 (S.D. Iowa 2007) (defendant convicted of 82 substantive counts of health care fraud must forfeit proceeds of entire scheme, not just proceeds involved in 82 counts on which he was convicted).

Finally, substitute assets need not be listed in an indictment.  *See United States v. Misla-Aldarondo*, 478 F.3d 52, 75 (1st Cir. 2007) (to obtain forfeiture of substitute assets, government need only show that requirements of section 853(p) are satisfied; there is no requirement of prior notice in indictment or elsewhere); *United States v. Parrett*, 530 F.3d 422, 426 n.3 (6th Cir. 2008) (government is not required to list substitute assets in indictment to institute forfeiture action against them); *United States v. Hatcher*, 323 F.3d 666, 673 (8th Cir. 2003) (no need for prior notice of what assets will be forfeited as substitute property); *United States v. Bollin*, 264 F.3d 391, 422 n.21 (4th Cir. 2001) (substitute assets need not be listed in indictment).

**VII.   Conclusion.**

Based on the facts of this case and for all of the reasons set forth herein and in its Sentencing Memorandum, the United States respectfully requests that the Court order the defendant Henry Lo to serve a sentence of imprisonment of 60 months, to be followed by a three-year term of supervised release.  The Court should order restitution in the amount of $2,198,194.85 to ANI/Square 1 Bank and $34,699.54 to the victim A.W.  The Court should also enter a forfeiture money judgment in the amount of $2,323,971.39, and an additional criminal monetary penalty of $10,000.

DATED:  March 9, 2015                                            Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
KYLE F. WALDINGER
Assistant United States Attorney