MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 436-6830
    Facsimile: (415) 436-7234
    E-mail: kyle.waldinger@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. CR 14-0442 WHO |
| Plaintiff, | **UNITED STATES' SUPPLEMENTAL SENTENCING MEMORANDUM** |
| v. | |
| HENRY LO, | Sentencing Date: March 26, 2015 |
| Defendant. | Time: 1:30 p.m. |
| | Court: Hon. William H. Orrick |

      The defendant Henry Lo is scheduled to be sentenced on March 26, 2015. Pursuant to the Court's request at the parties' last appearance, *see* doc. 42, the United States now files this Supplemental Sentencing Memorandum to advise the Court of the sentences given, and the facts of, other fraud cases in this District. As set forth below, the cases cited by Lo in his sentencing Reply are distinguishable on numerous grounds. Furthermore, the sentences requested by the Probation Office and the government are in line with those imposed in other embezzlement and fraud cases in this District.

      Moreover, the conduct and information that the United States learned of less than one week ago, *see* docs. 43 & 44, raise serious questions about the appropriate sentence for this defendant. Indeed, the defendant's conduct since his entry of plea supports the conclusion that he has breached the Plea Agreement by committing new criminal conduct since that time (*i.e.*, the thefts from Maventus and Character) and by failing to truthfully disclose his assets to the Probation Office, the government, and

USA'S SUPP. SENTENCING MEMORANDUM
CR 14-0442 WHO

the Court (*i.e.*, by failing to disclose his account at E-Trade). The Court should take these factors into account and sentence Lo to the top of the Guidelines range contemplated in the Plea Agreement for offense level 24 and criminal history category I, *i.e.*, **63 months**. An additional 3 months' imprisonment is warranted for the defendant's failure to comply with the terms of the Plea Agreement and for embezzling more than $235,000 from the company Character after he entered his guilty pleas.

**I. Section 3553's Admonition "to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct" Justifies a Lengthy Sentence of Imprisonment.**

In his Reply to the United States' Sentencing Memorandum, the defendant cited several cases to support the proposition that "[i]n this District, defendants with no criminal history who have also been charged with fraud-related criminal violations with losses of between $1.8 million and $12 million have received sentences of less than 14 months imprisonment." Def. Reply, at 3:17-19. As explained below, the cases Lo relies upon are distinguishable on many grounds. In any event, Lo ignores numerous other similar cases in which judges have imposed comparable sentences.

**A. The Cases Cited by the Defendant.**

As an initial matter, two of the cases cited by the defendant – *Besser* and *Massis* – involved loan fraud and are distinguishable on that basis. Besser was charged with making a false statement to a federally insured bank to obtain a single small business loan package of $1.75 million for her business (consisting of a main loan and line of credit), in violation of 18 U.S.C. § 1014. Besser's conduct – unlike Lo's – did not involve embezzlement, did not involve sophisticated means, did not involve abuse of a position of trust, did not take place over numerous years, and did not victimize individual people.

Massis pleaded guilty to three Section 1014 charges, as well as a Section 1001 false-statements charge. Massis's crimes related to business loans that he obtained from banks in about 2008 and 2009 totaling about $2 million. Like Besser, Massis's case involved neither embezzlement, sophisticated means, nor abuse of a position of trust. His crime also did not involve individual victims.

The defendant also directs the Court to *Ghazvini*, and states that it was a case involving a "defendant charged with embezzlement of approximately $1.8 million." Def. Reply, at 3:23-24. However, a review of the pleadings in that case makes clear that the offense conduct involved, *not* embezzlement from Ghazvini's employer Seagate, but Ghazvini's and his conspirators' pocketing of

*kickback* payments from Seagate suppliers. *See* CR 12-0660 CW, doc. 170, at 2:6-7 (defendant sentencing memorandum describing offense conduct as "providing confidential and non-confidential information to Seagate suppliers in exchange for payment"). Simply put, Ghazvini's receipt of kickback payments is quite different than the outright thefts of funds committed by the defendant Lo here.

Lo also cites *Goldfarb*, and states that that defendant was "charged with defrauding hedge fund investors of approximately $12 million." Def. Reply, at 3:25-26. However, Goldfarb argued that the loss amount could not "reasonably be determined," CR 11-0099 WHA, doc. 143-2, at 19:3-4, and the United States recommended a loss amount of only between $2.5 and $7 million. The United States agreed that a modest departure from the advisory range of 46 to 57 months (which the Court calculated as 41 to 51 months) was warranted based on several Section 3553(a) factors (including mental health issues), and recommended a sentence of 30 months. Judge Alsup imposed a 14-month sentence.

The last case cited by the defendant – *Nosal* – related to the theft of trade secrets and other proprietary information (not money) through unauthorized computer access. The defendant was convicted after trial. Judge Chen found a significantly smaller loss amount in that case (between $30,000 and $70,000), and added a 2-point organizer/leader enhancement. He imposed a sentence of one year and one day, which was only 3 months below the bottom of the Court's Guidelines range.

**B. Other Cases in this District.**

As an initial matter, the United States believes that Section 3553's admonition to avoid sentencing disparities among defendants with similar records who engage in similar conduct is of limited import here. This is because this case involves (1) complicated facts, (2) numerous methods of executing the scheme, (3) multi-year conduct against two victims (one corporate, one individual), and (4) highly peculiar and contumacious post-offense conduct (*e.g.*, the transfer of Lo's home to his wife in violation of Judge Corley's Order and Lo's conduct vis-à-vis the companies Maventus and Character). Accordingly, this case is distinguishable on any number of grounds from practically every other case inside or outside of this District. The United States nevertheless describes below several cases that show that other defendants who have engaged in conduct akin to Lo's have received sentences comparable to the sentences recommended by either the Probation Office or the government.

*United States v. Zenaida Smith*, CR 07-0246 MHP – Ms. Smith was the payroll manager for the

Bay Area operations of Panalpina, Inc., a Swiss air freight company. From early 2005 to mid-2006, Smith embezzled more than $480,000. She did so, in part, by using the identity of a former Panalpina employee. She pleaded guilty to charges of unauthorized access of a protected computer, wire fraud, money laundering, and aggravated identity theft. In addition to receiving an enhancement for the amount of loss (+14), Smith also received enhancements for money laundering (+1) and for abuse of position of trust (+2). Judge Patel sentenced the 59-year-old defendant to 48 months' imprisonment.

*United States v. Robert Schenk*, CR 11-00014 SI – Schenk pleaded guilty to wire fraud and conspiracy charges related to an investment and mortgage fraud scheme involving losses of about $4.5 million and more than 10 victims, many of whom were his friends. Schenk's range was the same as Lo's – 51 to 63 months. Because he had provided substantial cooperation, the government moved for a departure and recommended a sentence of 40 months. Judge Illston granted the departure motion, but declined to depart to the extent requested. She imposed a sentence of 48 months' imprisonment.

*United States v. Robin O'Connor*, CR 11-0814 JW – O'Connor pleaded guilty to a wire fraud charge related to her embezzlement of $2.2 million from the San Francisco Giants from June 2010 to June 2011, where she worked as payroll manager. During the course of the scheme, the defendant returned $360,000, and she returned an additional $600,000 after the Giants detected the scheme. At the time of sentencing, the defendant had also already agreed to forfeit certain assets (including two automobiles and seized funds) to pay restitution. She was sentenced to 21 months' imprisonment.

*United States v. Brandon Hill*, CR 11-0880 CRB – The *Hill* case was related to a false billing scheme that ran from 2002 to 2008. Hill worked for two different companies (one belonging to his co-conspirator Korinzer, and one belonging to Hill) that targeted businesses with retail and office locations throughout the United States and Canada. The defendant would ship light bulbs to the companies' retail locations, even though the businesses had not ordered the bulbs. He would then send each company's accounts payable department a bill for the bulbs. Hill and Korinzer defrauded at least 846 businesses of more than $1.6 million. Based on a 63 to 78 month range, Judge Breyer imposed a 48-month sentence. (Korinzer, who was prosecuted before Hill and who was facing immigration consequences, received a "split" sentence of (a) 364 days' imprisonment followed by (b) 12 months in a residential re-entry center followed by (c) 13 months in home confinement with electronic monitoring based on a $400,000 to

$1,000,000 loss amount and more than 250 victims. *See United States v. Korinzer*, CR 08-0165 CRB.)

*United States v. Roland Raymond*, CR 13-0024 WHA – Raymond, the Yurok Tribe's forestry director, embezzled approximately $850,000 from the Tribe. He pleaded guilty to conspiracy. The United States moved for a downward departure and recommended a 27-month sentence based on Raymond's cooperation. (That recommendation was tempered significantly by Raymond's conduct while in custody.) Judge Alsup imposed a top-of-the-Guidelines sentence of 37 months.

*United States v. Robert Strahan*, CR 14-0295 TEH – The defendant in *Strahan* worked for a non-profit corporation, first as a contractor, then as its CFO. In pleading guilty to wire fraud, mail fraud, and tax evasions charges, Strahan admitted that he had cashed checks from the group's bank account amounting to more than $550,000 for his own benefit, bought more than $250,000 worth of personal items with the organization's credit cards, and overpaid an acquaintance whom he had hired. There were enhancements for a loss amount of between $400,000 and $1 million (+14) and abuse of position of trust (+2). Judge Henderson sentenced Strahan to 57 months' imprisonment.

\* \* \*

Section 3553's admonition to avoid disparities among defendants with similar records who engage in similar conduct is only one of several factors that courts must consider in fashioning sentences. Here, the government submits that (1) the nature and circumstances of the offenses, (2) Lo's history and characteristics, (3) the need for both specific and general deterrence, (4) the need to promote respect for the law, (5) the Guidelines calculations, and (6) the need to punish this defendant and to protect the public from his further crimes all support a Guidelines sentence. The cases cited above show that similarly situated defendants have received comparable sentences. To the extent that there is ***any*** doubt that a Guidelines sentence is warranted here, the United States submits that any such doubt is erased when one considers the additional conduct that has come to light since the defendant's guilty pleas (*i.e.*, his violation of Judge Corley's Order, his new crimes against Maventus and Character, and his failure to truthfully disclose all of his assets to the Probation Office and the government).

**II.     The Additional Conduct that has Come to Light Since the Defendant's Guilty Pleas.**

At the hearing on March 12, 2015, undersigned counsel advised the Court that the government's investigation regarding the defendant Lo's new criminal conduct was continuing and that the

government may change its position regarding whether the defendant was entitled to a reduction in his offense level for acceptance of responsibility. 3/26/15 Tr., at 34:16-35:3. Counsel is mindful of the fact that the Court expressed serious concerns the government was changing its position, after having agreed to reduce the defendant's offense level for acceptance of responsibility both in the Plea Agreement and in its sentencing memoranda. 3/26/15 Tr., at 35:4-9. The Court stated that it was fairly certain as to what the appropriate Guidelines calculations were, but noted that "if there's some remarkable reason that I should look at that [*i.e.*, the acceptance-of-responsibility reduction], I will." 3/26/15 Tr., at 36:2-5.

At the last hearing, the information about the defendant's new criminal conduct consisted of evidence that the defendant had misappropriated a rather small amount of money from Maventus ($378.16) and that he later attempted to misappropriate a somewhat larger amount ($15,300).

Since the last hearing, the United States has received bank records from Chase showing that Lo's Solid Line Products' account (ending -8360) did indeed receive a deposit of $378.16 on December 18 from Maventus. *See* Ex. 1. In addition, the United States received additional records from Bill.com showing that the $15,300 payment was *intended* to be sent to an account at Chase ending -8360. *See* Ex. 2, at 1 & 2. The authorized Bill.com user for the Solid Line Products account was identified as Henry Lo. *Id.* at 3. The totality of the records and evidence provided by the United States leads to the conclusion that Lo did, in fact, attempt to steal more than $15,000 from Maventus in December 2014.

To take a pragmatic view, the Maventus conduct might be written off as just not significant enough to take into account for sentencing, or as conduct whose motivation is still open to debate. However, the criminal conduct that the United States discovered on March 18 changes that calculus. The United States will not repeat in detail the evidence regarding that conduct, but rather refers the Court to docket entries 43 and 44 for a fuller account. That conduct can be summarized as follows:

- Lo was employed by a company known as Early Growth Financial Services ("EGFS"). EGFS assigned Lo to work as a contract Chief Financial Officer ("CFO") for several companies, one of which was one named "Character."

- Lo began working as Character's contract CFO in about May 2014. His duties included paying Character's and its partners' periodic tax obligations.

- Lo instructed Character employees to provide him 6 checks written to "ETF" to pay taxes. Lo appears to have then changed these checks to read "ETRADE." To date, an FBI forensic accountant has confirmed with ETRADE that two of these checks (numbered 6410 in the amount of $98,500 and numbered 6470 in the amount of $86,500) were deposited into an ETRADE account in Lo's name.

USA'S SUPP. SENTENCING MEMORANDUM
CR 14-0442 WHO                                                                                                              6

- Character has identified 2 additional checks that were made out to ETRADE (but which do not appear to have first been written to "ETF"). Some of the handwriting on these checks has been identified as Lo's by a Character employee. That Character employee has informed the government that the Character partner's signature on one of those checks was forged. The FBI forensic accountant has confirmed with ETRADE that both of these checks were also deposited into an account held by Lo at ETRADE.

- Character had no business reason to pay any funds to ETRADE.

- Character employees do not believe that any of the checks that were provided to Lo for payment of tax obligations were actually cashed by the relevant taxing authority.

In this case, the United States has presented nearly irrefutable evidence that the defendant has continued to commit crimes of embezzlement/theft *after* he pleaded guilty on November 20, 2014. This includes his (1) theft of $387.16 from Maventus; (2) his attempted theft of $15,300 from Maventus; and (3) his theft of $236,625 from Character in January and February 2015. The defendant's last theft from Character was a check in the amount of $86,500. With respect to that check, the defendant was given ample opportunity to change his mind after he initially sought the funds from Character. This is because three Character partners required Lo to meet with them for about 45 minutes on February 28, 2015 so that Lo could explain to them why they had to pay taxes again so soon after paying a large amount at the end of 2014. Instead of taking the Character partners' challenge as an invitation not to go ahead with the scheme, Lo continued on the same path that he had started with Character in June 2014 and provided a complicated explanation as to why the company owed more money to the IRS. Within days of defrauding Character out of this check, the funds were sitting in Lo's E-Trade account. The fact that this conduct occurred *less than two weeks* before Lo was to be sentenced for the crimes to which he pleaded guilty speaks volumes to the question of what sentence should be imposed in this case.[1]

Section 3661 provides that "[n]o limitation shall be placed on the information concerning the

---

[1] Lo has also breached his Plea Agreement. As set forth above, he has broken his promises "not to commit or attempt to commit any crimes before sentence is imposed or before I surrender to serve my sentence" and "not to violate the terms of my pretrial release." Plea Agrm., ¶ 10.

In addition, under the terms of the Plea Agreement, Lo agreed that, "upon request of the Court, the government, or the Probation Office," he would "provide accurate and complete financial information," Plea Agrm., ¶ 9, and would "not to intentionally provide false information to the Court, the Probation Office, Pretrial Services, or the government." Plea Agrm., ¶ 10. As set forth in the PSR, the defendant provided "financial declarations" to the Probation Officer as part of the presentence process. PSR, ¶ 81. In those declarations, Lo did not disclose his ETRADE account to the Probation Officer, which is in violation of the promises in his Plea Agreement.

USA'S SUPP. SENTENCING MEMORANDUM
CR 14-0442 WHO 7

background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661. Mindful of the Court's statements at the last hearing, the government does not wish to be a "moving target" for the Court, which has clearly invested a significant amount of time to learn the facts of this case and to digest the voluminous materials related to sentencing and other matters that have been filed. However, based on the new conduct that the United States discovered on March 18, it now amends its prior sentencing recommendation and requests that the Court sentence Lo to the top of the Guidelines range, 63 months.

**VII. Forfeiture.**

As the United States was finalizing this memorandum, the defendant filed his supplemental brief. To put it charitably, the defendant misunderstands the government's position regarding forfeiture. The government is *not* seeking an order of forfeiture regarding Lo's *home*. The government quite clearly has stated that it is seeking a "***forfeiture money judgment***." Forfeiture money judgments may be ordered in the amount of the proceeds of the crime. As set forth in its previous filings, the United States has proved by overwhelming evidence that the proceeds of Lo's crimes are $2,323,971.39. Accordingly, Lo's effort in his latest filing to show that the home was purchased with "clean" money is entirely irrelevant to the question of whether this Court may and should enter a forfeiture money judgment in the amount requested by the government. AUSA David Countryman explained to the Court at the parties' last appearance why a forfeiture money judgment provides an additional and useful tool for the United States to seize and restrain assets of the defendant that it may locate in the future.

**VIII. Lo's Transfer of his Home to his Wife.**

The United States has insufficient time before filing this brief to research the legal issues raised by the defendant regarding Judge Corley's Order. However, it is undisputed that (1) Lo did, in fact, transfer the property to his wife but yet, as the government noted at the last hearing, (2) stood silent at his initial appearance in September 2014 when government counsel told Judge Spero that Lo had a home in the city. Indeed, the government believes that Lo misrepresented to the Pretrial Services Officer who interviewed him after his initial appearance that he owned the house in St. Francis Wood. (Because Pretrial Services will not disclose the document to the government, the government has requested the

assigned Probation Officer to obtain the original Pretrial Services report and to bring it to the parties' next appearance on March 26, 2015.) Moreover, in Lo's initial report of his assets to the Probation Officer as part of the presentence investigation process, he apparently still claimed to own the St. Francis Wood property, based on the listing of assets set forth in the Draft PSR. In short, whether or not Lo can concoct some justification now for his actions in transferring the home to his wife, the fact of the matter is that he *misled* the government, Pretrial Services, and the Probation Office regarding his ownership of the house. Lo's deceit indicates that he believed his transfer of the home to be wrongful and, in any event, that deceit is something that this Court should take into account in fashioning a sentence. *See* 18 U.S.C. § 3661.

**VIII. Conclusion.**

Based on the facts of this case and for all of the reasons set forth herein and in its prior filings, the United States amends its previous sentencing recommendation and asks this Court to impose a sentence of 63 months' imprisonment, to be followed by a three-year term of supervised release. The Court should order restitution in the amount of $2,198,194.85 to ANI and $34,699.54 to the victim A.W., for a total of $2,232,894.39. The Court should also enter a forfeiture money judgment in the amount of $2,323,971.39, and an additional criminal monetary penalty of $10,000. The special assessment is $300.

DATED: March 24, 2015                         Respectfully submitted,

                                              MELINDA HAAG
                                              United States Attorney


                                               /s/
                                              KYLE F. WALDINGER
                                              Assistant United States Attorney