MELINDA HAAG (CABN 132612)
United States Attorney

DAVID R. CALLAWAY (CABN 121782)
Chief, Criminal Division

KYLE F. WALDINGER (CABN 298752)
Assistant United States Attorney

    450 Golden Gate Avenue, 11th Floor
    San Francisco, California 94102
    Telephone: (415) 436-6830
    Facsimile: (415) 436-7234
    E-mail: kyle.waldinger@usdoj.gov

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| UNITED STATES OF AMERICA, | ) | No. CR 14-0442 WHO |
|---|---|---|
|     Plaintiff, | ) ) | **UNITED STATES' SECOND SUPPLEMENTAL SENTENCING MEMORANDUM** |
| v. | ) ) | |
| HENRY LO, | ) ) | Sentencing Date: April 9, 2015 |
|     Defendant. | ) ) | Time: 1:30 p.m. Court: Hon. William H. Orrick |

The defendant Henry Lo's next scheduled appearance is April 9, 2015. Absent an agreement between the parties regarding disposition of allegations of new criminal conduct by the defendant, the United States anticipates that the Court will sentence the defendant on that day.

At the appearances on March 12 and March 26, 2015, the parties and the Court discussed the United States' request for a forfeiture money judgment. Lo has objected to a forfeiture money judgment based on lack of notice and on the failure of the government to adhere to the elements of 21 U.S.C. § 853(p) as to forfeiture of substitute property. On March 26, 2015, the Court directed the government to be ready to demonstrate how it has met the burden for the requested forfeiture order in light of the defendant's objections. *See* doc. 54.

In anticipation of the hearing on April 9, 2015, the United States now files this memorandum to address the defendant's latest objections regarding forfeiture. The United States also provides the Court

USA'S 2D SUPP. SENTENCING MEMORANDUM
CR 14-0442 WHO

with additional information regarding the circumstances of Judge Corley's Temporary Protective Order.

**I.     The United States has Provided Sufficient Notice to Lo Regarding Forfeiture.**

The Grand Jury returned the 29-count Indictment on August 19, 2014. *See* doc. 1. The Indictment contained a forfeiture allegation under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c). The forfeiture allegation notified Lo that, upon conviction of the offenses in the Indictment, the United States would seek forfeiture of "all property constituting, and derived from, proceeds the defendant obtained directly and indirectly, as the result of those violations." Doc. 1, at 9. The Indictment specified that such "proceeds" of Lo's crimes included, but were not limited to, the following:

  a.  55 San Fernando Way, San Francisco, California;

  b.  the funds in the Charles Schwab account held in the name of Henry LO, numbered ending -0644;

  c.  the funds in the Charles Schwab account held in the name of Henry LO, numbered ending -9414;

  d.  the funds in the Charles Schwab account held in the name of Henry LO, numbered ending -1172;

  e.  the funds in the Charles Schwab account held in the name of J.H. (Henry LO's wife), numbered ending -9183;

  f.  the funds in the Bank of America account held in the name of Henry LO, numbered ending -5195; and

  g.  the funds in the PayPal account named Event Services.

Doc. 1, at 9-10.

The Indictment also put Lo on notice that his interest in other property would be forfeited under 21 U.S.C. § 853(p), if any of the proceeds of his crimes, as a result of Lo's act or omission

  a.  could not be located upon the exercise of due diligence;

  b.  had been transferred or sold to, or deposited with, a third person;

  c.  had been placed beyond the jurisdiction of the Court;

  d.  had been substantially diminished in value; or

  e.  had been commingled with other property that could not be divided without difficulty

Doc. 1, at 9-10.

USA'S 2D SUPP. SENTENCING MEMORANDUM
CR 14-0442 WHO                                                                                                2

Although the defendant did not agree to forfeiture in the parties' plea agreement, he nevertheless recognized that forfeiture was one of the possible consequences of his guilty pleas. *See* doc. 18, at 2-3; *id.* at 8 (agreeing and acknowledging that monetary penalties of restitution, forfeiture, and fines were possible consequences of guilty pleas).

In its Sentencing Memorandum filed on March 5, 2015, the United States requested that the Court enter a forfeiture money judgment in an amount equal to the proceeds of Lo's criminal schemes. Those proceeds amount to $2,323,971.39. *See* doc. 29, at 1 & 13. On March 9, 2015, the United States submitted an Application for a Preliminary Order of Forfeiture. Doc. 37.

For all of the reasons set forth above, the United States submits that the defendant has been well notified of the United States' intent to seek forfeiture in this case. The Indictment contained a forfeiture allegation, forfeiture was contemplated as a potential consequence of the defendant's convictions, and the United States specified the amount of the forfeiture money judgment that it was seeking nearly a month ago, on March 5, 2015.

**II.    To the Extent that it Applies, the United States has Complied with Section 853(p).**

As an initial matter, the United States need not meet Section 853(p)'s requirements in order to obtain a forfeiture money judgment. Ninth Circuit law is clear in this regard. In a case cited by the defendant himself (*see* doc. 38, at 4:20), the court of appeals distinguished between the government's ability to seek "substitute property" and its ability to obtain a forfeiture "money judgment":

> Rule 32.2(e) allows the government also to seek "substitute property." *See* 21 U.S.C. § 853(p) (permitting the substitution of property in some circumstances). That provision carries its own set of procedural and substantive requirements before the court may order the forfeiture of substitute property. But, here, the government did not seek "substitute property" under Rule 32.2(e). The government sought only a money judgment as a form of criminal forfeiture under Rule 32.2(b). Because the government sought a money judgment in the first instance, there was no need to seek substitute property. *See United States v. Candelaria-Silva*, 166 F.3d 19, 42 (1st Cir. 1999) ("A criminal forfeiture order may take several forms. First, the government is entitled to an in personam judgment against the defendant for the amount of money the defendant obtained as proceeds of the offense. Second, to the extent the government can trace any of the proceeds to specific assets, it may seek the forfeiture of those assets directly . . . . Third, if as a result of some act or omission of the defendant, the government cannot trace the proceeds to specific assets, it may seek the forfeiture of [substitute property].").

*United States v. Newman*, 659 F.3d 1235, 1242-43 (9th Cir. 2011). Thus, *Newman* makes clear that a forfeiture "money judgment" is a different animal than forfeiture of "substitute property." Here, as

noted throughout its sentencing pleadings, the United States is seeking a forfeiture money judgment. *Newman*'s holdings are fatal to the defendant's latest objections.[1]

Nevertheless, even if the United States were deemed to be seeking substitute property under 21 U.S.C. § 853(p), it clearly meets the requirements of that provision. Section 853(p) provides that, if the United States satisfies *any* of the following criteria, it may seek to forfeiture specific substitute assets:

(A) the property cannot be located upon the exercise of due diligence;

(B) the property has been transferred or sold to, or deposited with, a third party;

(C) the property has been placed beyond the jurisdiction of the court;

(D) the property has been substantially diminished in value; *or*

(E) the property has been commingled with other property which cannot be divided without difficulty.

21 U.S.C. § 853(p)(1) (emphasis added).

Here, it is undisputed that the one significant asset that Lo held before his Indictment – the home located at 55 San Fernando Way in San Francisco – has been transferred to the defendant's wife. *See* doc. 29, Ex. 6 (interspousal transfer deed filed 8/19/2014). In addition, the records in the United States' possession show that the accounts listed in the Indictment do not contain sufficient funds to satisfy the requested forfeiture. Furthermore, neither Lo nor his wife appear to maintain any of the accounts at Bank of America, Schwab, or PayPal that are listed in the Indictment, because the defendant did not disclose those accounts to the Probation Officer. *See* PSR, ¶ 81. In any event, as set forth below, the information in the United States' possession is that the balances in those accounts when Lo and his wife *were* known to have maintained them was insufficient to satisfy the requested forfeiture amount.

---

[1] The defendant relies on *Newman* for other reasons, *see* doc. 38, at 4, but the United States believes that its prior filings addressed these concerns, *see* doc. 35, at 8:23-29. Lo has also cited an unpublished Ninth Circuit case from 2006. *See* doc. 38, at 4 (citing *Adams*). As an initial matter, Federal Rule of Appellate Procedure 32.1 does not authorize citation of pre-2007 cases such as *Adams*, so Lo is simply wrong to claim that *Adams* is any kind of "Circuit precedent." Doc. 38, at 4:25-26. In any event, *Adams* is distinguishable on its facts. In *Adams*, the charged conspiracy began "no later than approximately February 26, 2011." 189 Fed. Appx. at 602. Based on this language, the court held that "[b]ecause Adams was not convicted of crimes committed in 1999, the district court wrongly considered the funds he used from the sale of his first home [which he bought in 1999] . . . as traceable to his fraud." *Id.* Here, the United States is not seeking forfeiture of specific assets that are not traceable to Lo's fraud. Rather, it is seeking a money judgment that is equivalent to the proceeds of Lo's crimes.

USA'S 2D SUPP. SENTENCING MEMORANDUM
CR 14-0442 WHO                                                                                                               4

1    The last known balance of the Bank of America -5195 account was a negative balance of $361.25 on December 27, 2012. *Ex. 1*, at US-BOA 00369. A companion account listed on the same statement (a Certificate of Deposit numbered ending -5041) was $1096.33. *Id.* The investigation also had revealed one other Bank of America account at the time of Indictment, which was numbered ending -6195 and was held in the name of Henry Lo. On December 5, 2012, that account had a negative balance of $11.07. *Id.* at US-BOA 001424.

The Schwab account numbered ending -0644 was held in the name of Henry Lo. This was an IRA account. The last statement from the -0644 account in the United States' possession shows an ending balance of $0 on September 30, 2013. *Id.* at US-CS 000970.

The Schwab account numbered ending -9414 was also held in the name of Henry Lo. The last statement from the -9414 account in the United States' possession shows an ending balance of $0 on September 30, 2013. *Id.* at US-CS 001000. The -1172 account appears to have been the account number associated with the checking account features of Lo's -9414 account. The last statement from that account in the United States' possession shows an ending balance of negative $12.02 in June 2011. *Id.* at non-Bates numbered last page.

The Schwab account numbered ending -9183 was held in Lo's wife's name. The last statement from the -9183 account in the United States' possession shows an ending balance of $0.01 on June 30, 2014. *Id.* at US-CS 001156.

The United States also identified one other Schwab account not listed in the Indictment. One of those accounts was a Uniform Transfers to Minors Act account for which Lo was the custodian for his minor daughter, numbered ending -8164. The last statement from the -8164 account in the United States' possession shows an ending balance on October 31, 2013 of $0. *Id.* at US-CS 001342.

Finally, the United States obtained records from PayPal regarding the "Event Services" PayPal account identified in the Indictment. The records in the United States' possession show a balance in that PayPal account of $0 by February 1, 2013. *See* Ex. 2 (first page of redacted and compressed spreadsheet with hidden columns). The last withdrawal from that PayPal account was on February 21, 2012 of $5,000 – to Lo's -5195 account at Bank of America. *See* Ex. 3.

Based on the foregoing, the United States has established that the *real property* identified in the

Indictment (55 San Fernando Way) has been transferred to a third party, which satisfies the factor set out in Section 853(p)(1)(B). Furthermore, the United States has established that the funds in the *financial accounts* identified in the Indictment have been depleted by Lo or his wife, which satisfies the factor set out in Section 853(p)(1)(D). In any event, as set forth in the United States' prior sentencing memoranda, a large amount of the proceeds of Lo's crimes were used to pay Lo's business and personal expenses or were transferred to third parties (such as S.W. and A.P.). *See, e.g.*, doc. 29, at 2:9-19 (noting that stolen funds were used to pay, among other things, tuition at Convent of the Sacred Heart, shipping fees, and rent at an apartment in Mission Bay, and that $105,000 of stolen funds were paid to S.W. and A.P.).

For all of the reasons set forth above and in its prior pleadings, the United States has established its right to a forfeiture money judgment in the amount of the proceeds of the offenses – **$2,323,971.39**.

### III.     Lo's Transfer of his Home to his Wife.

In his last filing, Lo presented several arguments regarding the propriety of his transfer of the San Fernando residence to his wife, arguing that that transfer did not violate Judge Corley's Temporary Protective Order. *See* doc. 52, at 3-4. The defendant's arguments are without merit, as set forth below.

On December 5, 2013, the parties in the civil case appeared before Judge Corley regarding the plaintiff Square 1 Bank's Motion for a Writ of Attachment. After the hearing, Judge Corley issued a minute order ordering the parties to meet and confer and submit a proposed protective order. *See* CV-12-05595 JSC, doc. 55 (attached hereto as Exhibit 4). Accordingly, a mere review of the docket in the civil case indicates that the proposed order subsequently submitted by Square 1 Bank and the one that Judge Corley ultimately issued was at the agreement of the defendant Lo.

A review of a transcript prepared of the December 5, 2013, hearing *confirms* this conclusion. During that hearing, Mr. Lallas (who previously spoke to this Court) proposed "that the Court issue a temporary protective order." Ex. 5, at internal p. 37. In response, Mr. O'Connor (Lo's attorney) hemmed and hawed but, ultimately agreed that a temporary protective order "would be one solution" and furthermore acknowledged that "[s]ome sort of temporary protective order, I suppose, would be all right." *Id.* Judge Corley then made clear that she thought "everything needs to stop [Judge Corley was presumably referring to Lo's conveying of assets] and so a temporary protective order needs to be in place and I think the bank needs to be given notice in advance." *Id.* at internal p. 38.

Mr. Lallas then suggested a procedure to the Court than including the Court issuing a temporary protective order. *Id.* Mr. O'Connor responded on behalf of the defendant Lo that Mr. Lallas's suggested procedure was "acceptable" to the defense. *Id.* at internal p. 39. Judge Corley then stated that she would in fact "impose a temporary protective order." *Id.* She directed the parties to meet and confer and submit a temporary protective order, but noted that, in any event, the temporary protective order would be "enforced today." *Id.* Judge Corley then noted that the defendant was present at the hearing before her "so he knows" about the temporary protective order. Finally, Judge Corley made clear that her temporary protective order "stays in place until further order of the Court." *Id.* at internal p. 40.

Accordingly, although Lo now questions whether Judge Corley had authority to enter the protective order, *see* doc. 52, at 3:22-25, a review of the record in the civil case shows quite clearly that the defendant *acquiesced* to the order and was, indeed, present in court when Judge Corley ruled. It is simply disingenuous for him to now claim that Judge Corley did not have authority to issue the order or that she made insufficient findings to justify keeping the order in place "until further order of the Court." Simply put, Judge Corley's order was clear, and the defendant clearly violated it for obvious reasons.

Square 1 Bank has filed a fraudulent transfer action, *see* CV 15-1059 WHO, and the United States may do the same after the Court enters its Judgment. The question of whether Lo's transfer of the San Fernando Way home to his wife constituted a fraudulent transfer will be litigated in those cases.

**IV.   Conclusion.**

Based on all of facts of this case and for all of the reasons set forth herein and in its prior filings, the United States requests that the Court sentence the defendant to 63 months' imprisonment and three years of supervised release. The Court should order restitution in the amount of $2,198,194.85 to ANI and $34,699.54 to the victim A.W. The Court should also enter a forfeiture money judgment in the amount of $2,323,971.39, and a fine of $10,000. The special assessment is $300.

DATED:   April 3, 2015                                          Respectfully submitted,

MELINDA HAAG
United States Attorney

/s/
KYLE F. WALDINGER
Assistant United States Attorney